UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JILL M. HOLMQUIST and ANTHONY QUATRONE | ) ) ) |
| Plaintiffs, | ) ) ) No. 2:19-cv-00036 |
| v. | ) ) |
| SUNBEAM PRODUCTS, INC., and KEHOE COMPONENT SALES, INC. d/b/a Pace Electronic Products, | ) ) ) ) |
| Defendants. | |

## MEMORANDUM OPINION

Jill M. Holmquist and Anthony Quatrone (the "Plaintiffs") brought this product liability action against Defendants Sunbeam Products, Inc. ("Sunbeam") and Kehoe Component Sales, Inc. d/b/a Pace Electronic Products ("Kehoe"), asserting design and manufacturing defects in a heated throw blanket that caught fire and caused both personal and property damage. Pending before the Court is Kehoe's Motion for Summary Judgment (Doc. No. 35). Plaintiffs filed a response (Doc. No. 49) and Kehoe did not file a reply. For the following reasons, Kehoe's motion will be denied.

## I. BACKGROUND[1]

On March 25, 2018, a fire broke out at Plaintiffs' home in Cookeville, TN. (Doc. No. 50-4). The fire investigation report and surveillance footage located inside the home establish that an electric blanket, known as the Sunbeam Fleece Heated Throw, was the cause. (Doc. Nos. 38-1; 50-1; 50-2; 50-3). Sunbeam designed the blanket and contracted with Kehoe to manufacture and

---

[1] The Court relies upon the undisputed in the parties' summary judgment briefings (Doc. Nos. 38, 49) along with Plaintiffs' Corrected Response to Defendant's Statement of Facts (Doc. No. 50). Plaintiffs set out additional facts to which Defendants did not respond. Pursuant to Local Rule 56.01(f), the Court deems those additional facts undisputed for purposes of summary judgment.

supply the blanket's controls. (Doc. No. 50 at ¶¶ 17-19). After the fire, investigators observed that the blanket's cord "travel[ed] around and possibly under the front" of a recliner in Plaintiffs' living room. (Doc. No. 38-1). Plaintiff Holmquist stated to an investigator that the cord "should not have been under the recliner but was possible." (Id.). Plaintiffs later turned over video surveillance footage that neither they nor fire investigators viewed before the fire investigation report was filed. (Id.). The footage shows a bright flash from an area around the blanket's control, rather than any cord, at approximately 6:14 A.M. (Doc. No. 50 at ¶ 20). Nothing else occurs on the footage for more than 5 hours until 11:25 A.M., when additional flashes, smoke, and, ultimately, a fire, ensued. (Id. at ¶¶ 21-22).

Kehoe argues that Plaintiffs abused the product by violating at least four warnings outlined in the blanket's user manual. (Id. at ¶¶ 5-13). Plaintiffs deny that a violation of any warning caused the fire; instead, they argue that the fire started in the defective control unit designed by Kehoe. (Id. at ¶ 10). Although Plaintiffs concede the blanket was plugged in while they were away from the home, they dispute it was turned on in the several hours leading up to the fire. (Id. at ¶ 7). Kehoe has now moved for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Griffith v. Franklin Cty., 975 F.3d 554, 566 (6th Cir. 2020) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). "The

moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." Id. (citation and internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. Rodgers, 344 F.3d at 595.

## III. ANALYSIS

Plaintiffs argue that Kehoe, along with Sunbeam, negligently and "defectively designed, manufactured, constructed, assembled, tested, and inspected" the blanket and its control. (Doc. Nos. 21 at ¶ 47; 50 at ¶ 1). Plaintiffs also argue Kehoe and Sunbeam are subject to strict liability for placing the defective or unreasonably dangerous product into the stream of commerce. (Id. at ¶ 49). Kehoe argues there is no genuine dispute of material fact as to whether the control was defective; rather, Plaintiffs' abuse of the product caused the fire. (Doc. No. 50 at ¶¶ 5-13).

### A. The Tennessee Products Liability Act

The Tennessee Products Liability Act, ("TPLA") Tenn. Code Ann. § 29-28-101, *et. seq.*, governs this diversity action. Under the Act, "a product liability action 'includes all actions brought for or on account of personal injury . . . or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product,' whether the case proceeds under a

3

theory of 'strict liability in tort; negligence; [and/or] breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent.'" Meyer v. Tapeswitch Corp., No. 14-cv-01398, 2017 WL 5495738, 2017 U.S. Dist. LEXIS 189867, at *15-16 (M.D. Tenn. Nov. 16, 2017).

To establish a claim under the TPLA, a plaintiff must show that "the product was defective and/or unreasonably dangerous." Jones v. WFM-Wo, Inc., 265 F. Supp. 3d 775, 778 (M.D. Tenn. 2017) (citing Tatham v. Bridgestone Americas Holding, Inc., 473 S.W.3d 734, 749 (Tenn. 2015)). "This is because the Act specifically provides that '[a] manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.'" Id. (citing Tenn. Code Ann. § 29-28-105(a)). Under the TPLA, a "defective condition" is "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." Tenn. Code Ann. § 29-28-102(2). And a product is "unreasonably dangerous" if it is: (1) "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics"; or (2) "that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition." Id. § 29-28-102(8).

Generally, under Tennessee law, "the issue of whether a product is defective or unreasonably dangerous is one for the jury." Goodwin v. Electrolux Home Prods., No. 09-cv-0106, 2011 WL 1357691, 2011 U.S. Dist. LEXIS 39319, at *14 (M.D. Tenn. Apr. 8, 2011) (citing Whaley v. Rheem Mfg. Co., 900 S.W.2d 296, 300 (Tenn. Ct. App. 1995)); see also Jackson v. GMC, 60 S.W.3d 800, 805 (Tenn. 2001) (same). But if the product instead was made unreasonably dangerous by a consumer's "improper maintenance or abnormal use, the manufacturer or seller is

not liable." Tenn. Code Ann. § 29-28-108.

### B. Whether the Control was Defective, Unreasonably Dangerous, or Used Abnormally

Kehoe argues it is entitled to summary judgment because Plaintiffs' use of the blanket made the product unreasonably dangerous, thereby absolving it from liability. (Doc. No. 38 at 4). Specifically, Kehoe argues that Plaintiffs violated at least four warnings outlined in the blanket's user manual, including: (1) improperly "pinch[ing], flex[ing], or expos[ing] the heating wire to rubbing"; (2) failing to "turn off or unplug the control" when not in use; (3) failing to keep "dogs, cats and other pets away from" the blanket; and (4) improperly using the blanket with "recliners . . . or other furniture subject to movement." (Doc. Nos. 38 at 4; 38-2). The parties dispute whether there is ample evidence to establish a violation of each warning. Kehoe argues the video surveillance indisputably shows Plaintiffs improperly used the blanket around pets, including a dog that "urinated near the control unit a few minutes prior to the fire starting." (Doc. No. 38 at 2). Moreover, the fire investigation report specifies that several animals were being removed from the house upon the fire department's arrival. (Doc. No. 36-1). Plaintiffs concede to having unrestrained pets around the blanket but dispute that they "did any damage to the product." (Doc. No. 50 at ¶ 9). Plaintiffs also deny having pinched, tucked in, or exposed the blanket's heating wire to rubbing. (Doc. No. 48-4 at ¶ 4).

Kehoe also argues that the video surveillance conclusively establishes that Plaintiffs improperly used the blanket with a recliner and entangled the wires therein. (Doc. No. 38 at 5). Kehoe links this alleged abuse to the fire investigation report's initial conclusion that the fire started at the base of the recliner, where the Plaintiffs concede the blanket's wiring could have been located. (Id.; see also Doc. No. 38-1). Plaintiffs admit to having used the blanket with a recliner but dispute the recliner's ability to move given its position against the living room wall.

5

(Doc. No. 50 at ¶¶ 2, 5). Plaintiffs additionally counterargue that video surveillance, which was only viewed after the fire investigation report, directly contradicts Kehoe's argument, as well as the fire investigation report, because it shows the fire started at the control rather than within the cord that might have run below the recliner. (Id.).

The parties also offer dueling expert testimony on the cause of the fire. Kehoe proffers testimony from electrical engineer, Jeffrey Lindsey. (Doc. No. 37). Lindsey testified that the fire started at the cord referenced in the fire investigation report, rather than in the control, and, in light of Plaintiffs' several warning violations, there is reasonable certainty that user abuse caused the fire. (Id.). To rebut this evidence, Plaintiffs proffer testimony from their own expert, certified fire investigator, William Truss. (Doc. No. 50-5). According to Truss, the cause of the fire was an "internal electrical fault of the pendant control of a heated throw." (Id. at ¶ 7). Truss also stated the cause of the internal electrical fault "was the ignition of the components of the pendant control which then spread to the throw and to nearby furniture." (Id. at at ¶ 8). Plaintiffs further argue that a normal electrical fault, outside of the control, would never have resulted in the smoking or fire that occurred in this case. (Doc. No. 49 at 5). In support Plaintiffs proffer additional testimony by Sunbeam Senior Manager of Program Management, Jill Walters. (Doc. No. 50-6). Walters testified in her deposition that "[b]ased upon the intended design of the subject control, if an electrical fault occurs within the control, it should not result in a smoking or ignition event." (Id. at ¶ 14). Plaintiffs further argue that Truss agrees with Walter's assessment (Doc. No. 50-6), as does Kehoe's 30(b)(6) witness, Robert Reese, who testified that a short circuit in the control "should not" cause a fire. (Doc. No. 50-7).

After reviewing the record in the light most favorable to Plaintiffs, the Court finds that there are genuine disputes of material fact on whether the blanket's control was unreasonably

6

dangerous or defective. Kehoe attempts to argue that Plaintiffs rely upon nothing more than mere allegations to support their products liability claim. (Doc. No. 38 at 5). This may have been true when Kehoe made this argument in its June 10, 2020 Motion for Summary Judgment filing. Yet, the close of discovery, pursuant to the Amended Case Management Order, was more than three months away, on September 25, 2020. (Doc. No. 45). Indeed, Plaintiffs rely upon more than the bare-bones assertions as argued by Kehoe. After Kehoe filed its Motion for Summary Judgment, the parties undertook additional discovery, and Plaintiffs submitted three affidavits – by William Truss, Jill Walters, and Plaintiff Jill Holmquist – along with excerpts of Robert Reese's deposition testimony. (Doc. Nos. 48-4; 48-5; 48-6; 48-7).

As discussed above, these affidavits and deposition testimony, along with physical evidence such as the surveillance footage and fire investigation report, are more than enough to establish a prima facie product liability case and create a genuine dispute of material fact about the defectiveness or unreasonable danger in the blanket's control. And because there is a factual dispute on whether the control was defective or dangerous, a reasonable juror could also determine that the defect or danger existed when the product left Kehoe's control. See Jones, 265 F. Supp. 3d at 778 (citing Tatham v. Bridgestone Americas Holding, Inc., 473 S.W.3d 734, 749 (Tenn. 2015)). A reasonable juror could also determine that a prudent manufacturer would not place a defective electric blanket into the stream of commerce and that an ordinary consumer would not expect the blanket's control to smoke and ignite, as it allegedly did here. See Tenn. Code Ann. §§ 29-28-102(2), (8). Under Tennessee law, the question of "whether a product is defective or unreasonably dangerous is [one] for the jury," Jackson v. GMC, 60 S.W.3d 800, 805 (Tenn. 2001). On this record, Kehoe has simply not "demonstrate[ed] an absence of evidence to support the non-moving party's case." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted).

7

Case 2:19-cv-00036 Document 59 Filed 02/22/21 Page 7 of 8 PageID #: 354

Plaintiffs' evidence is enough to establish a genuine dispute of material fact. Accordingly, the Court finds that Kehoe is not entitled to summary judgment.

**CONCLUSION**

For the foregoing reasons, Kehoe's Motion for Summary Judgment (Doc. No. 35) will be denied.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE